## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

JOHNNY KASH BRYANT,                   )
                                      )
                   Petitioner,        )
v.                                    )          Case No. 17-CV-0468-CVE-JFJ
                                      )
                                      )
JANET DOWLING,                        )
                                      )
                   Respondent.        )

### OPINION AND ORDER

This matter is before the Court on the amended 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 10) filed by petitioner Johnny Kash Bryant, a state inmate appearing pro se. Petitioner is currently serving a 99-year prison sentence, under the state-court judgment entered against him in the District Court of Tulsa County, in Case No. CF-2012-297, following his conviction on one count of lewd molestation of a child under 12 years of age. The Court has reviewed the amended petition (Dkt. # 10), respondent's response (Dkt. # 28) in opposition to the amended petition, petitioner's reply brief (Dkt. # 31) and the records from petitioner's criminal and postconviction proceedings in state court (Dkt. ## 28, 29, 30). The Court finds that no evidentiary hearing is necessary to resolve the claims asserted in the amended petition and that petitioner is not entitled to federal habeas relief. The Court therefore denies petitioner's request for an evidentiary hearing and denies the amended petition.

### *BACKGROUND*

On the morning of November 7, 2011, M.B., the six-year-old granddaughter of petitioner's ex-wife, told her grandmother ("Grandmother") that petitioner "rubb[ed] on her tutu" while M.B.,

Grandmother and petitioner were sleeping on a fold-out couch.  Dkt. # 29-3, Tr. Trial vol. 3, at 20-29, 115.[1]  Grandmother immediately reported the disclosure to police.  Id. at 116.  Following an investigation, the State of Oklahoma charged petitioner, in the District Court of Tulsa County, Case No. CF-2012-297, with one count of lewd molestation, in violation of OKLA. STAT. tit. 21, § 1123 (2011).  Dkt. # 29-7, O.R., at 15 [10].  The State alleged that petitioner "willfully or maliciously touch[ed] the vagina" of M.B., a six-year-old female, "in a lewd and lascivious manner" on or about November 7, 2011, and that petitioner was 47 years old at the time of the incident.  Id.  Represented by counsel, petitioner waived his statutory right to a preliminary hearing and the case proceeded to trial in June 2013.  Dkt. # 29-7, O.R., at 7 [3], 35 [30].

Before trial, the State filed a notice of intent to use evidence of other crimes or prior bad acts.[2]  Dkt. # 29-7, O.R., at 64-72 [59-67]; Dkt. # 29-1, Tr. Trial vol. 1, at 2-3.  Specifically, the State sought to introduce evidence that while petitioner was married to Grandmother, petitioner sexually abused M.B.'s mother ("Mother"), who was then between the ages of 10 and 14,  by "licking her vagina with his tongue and touching her vagina with his hand and fingers in a lewd and lascivious manner" and by having Mother sit on his lap while he "move[d] his hips up and down."  Dkt. # 29-7,

---

[1]   For consistency, the Court's record citations refer to the CM/ECF header page number located in the upper right-hand corner of each document.  However, for citations to the original record (O.R.), the Court's record citations also refer, in brackets, to the original page number.

[2]   Under Oklahoma law, other crimes evidence may be admissible under a res gestae exception or under OKLA. STAT. tit. 12, § 2404(B).  Baird v. State, 400 P.3d 875, 885 (Okla. Crim. App. 2016).  Section 2404(B) provides that evidence of other crimes, wrongs, or acts may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  OKLA. STAT. tit. 12, § 2404(B).  In addition, in a prosecution for child molestation, "evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."  OKLA. STAT. tit. 12, § 2414.

O.R., at 65 [60].  In the written notice, the State argued that the evidence was admissible, under

OKLA. STAT. tit. 12, § 2404(B), to show "motive, opportunity, intent, plan, and identity" and, under

OKLA. STAT. tit. 12, § 2414, to show "propensity to commit the charged offense."  Id. at 66-72 [61-

67].  Petitioner's trial counsel filed a motion seeking to exclude this evidence.  Dkt. # 29-7, O.R.,

at 59-62 [54-57].

On the first day of trial, outside the presence of the jury, the trial court heard arguments

regarding the admissibility of Mother's sexual abuse allegations. Dkt. # 29-1, Tr. Trial vol. 1, at 2-6.

The State argued that the allegations were disclosed to law enforcement and investigated by the

Department of Human Services (DHS) in 1996 and 1998 and were admissible "to show any lack of

mistake" and "a pattern that [petitioner] is . . . committing similar same acts."  Dkt. # 29-1, Tr. Trial

vol. 1, at 3.   Trial counsel argued that the allegations should be excluded because the charged

conduct involved a one time "outside-of-the-clothes touching" of M.B.'s vaginal area and buttocks

and was therefore "substantially different" than the alleged abuse of Mother that spanned a four-year

period and included touching Mother's vagina with his hands, fingers, and tongue.  Id. at 3-5.  Trial

counsel further argued that there was a "huge gap in the time" between the charged conduct and the

alleged prior bad acts, that the DHS investigations resulted in no charges, and that the evidence

would be more prejudicial than probative.  Id. at 4-5.  After hearing arguments from both parties, the

trial court ruled that it would admit the evidence over petitioner's objection.  Id. at 6.[3]

---

[3]    At the end of the admissibility hearing, the State obtained permission to file an amended information to clarify, as relevant for sentencing purposes, that M.B. was under 12 years of age rather than under 16 years of age. Dkt. # 29-1, Tr. Trial vol. 1, at 6-7.  The trial court noted that this exposed petitioner to a sentencing range of 25 years to life and confirmed with both parties that the State had offered petitioner a 25-year sentence in exchange for a guilty plea and that petitioner had rejected that offer.  Id. at 7.  The State filed the amended information on June 17, 2013, the first day of trial.  Id. at 1; Dkt. # 29-7, O.R., at 74 [69].

Before opening statements, the trial court also held a hearing, pursuant to OKLA. STAT. tit. 12, § 2803.1,[4] to determine the admissibility of statements M.B. made on November 10, 2011, three days after the alleged touching, during a forensic interview at the Justice Center. Dkt. # 29-2, Tr. Trial vol. 2, at 76-88. After hearing testimony from Melissa Gantz, the forensic interviewer, the trial court found M.B's statements were "inherently trustworthy" and admissible. Id. at 87.

The State presented evidence at trial establishing that in November 2011, when M.B. was six years old, she lived in a small house in Tulsa with Mother, three siblings, her mother's then-boyfriend and Grandmother. Dkt. # 29-3, Tr. Trial vol. 3, at 15-19, 43-45. On November 6, 2011, petitioner, who is Grandmother's ex-husband and Mother's former stepfather, was sitting on the front porch visiting with Grandmother and M.B.'s uncle when Mother arrived home from work. Id. at 46-47, 86. Mother told petitioner he could stay to visit but he was not allowed in the house. Id. at 48-49, 93, 111. Eventually, everyone went inside and went to bed except petitioner and M.B.'s uncle; they remained on the porch and continued drinking beer. Id. at 46-49, 110-112, 121-22, 145-46.

That night, M.B. slept with Grandmother on the fold-out couch in the living room. Dkt. # 29-3, Tr. Trial vol. 3, at 17, 20, 49, 111-12. M.B., who was seven at the time of trial, testified that petitioner came inside the house sometime after Grandmother, Mother, and Mother's boyfriend were asleep. Id. at 10, 20, 36. M.B. described petitioner as her "grandfather at the time" and also referred

---

[4]     As relevant here, § 2803.1 governs the admissibility of out-of-court statements made by children under 13 years of age that describe "any act of sexual contact performed with or on the child . . . by another." Such statements are admissible if (1) the trial court, after an evidentiary hearing, finds under the totality of circumstances that the statements are sufficiently reliable and trustworthy and (2) the child either testifies or is available to testify at trial or, if the child is unavailable to testify, "there is corroborating evidence of the act." OKLA. STAT. tit. 12, § 2803.1

to him as "Johnny." Dkt. # 29-3, Tr. Trial vol. 3, at 15-42.  Petitioner laid down on the bed where

M.B. was sleeping with Grandmother.  Id. at 20-21.  According to M.B., she "was kind of in the

middle of" Grandmother and petitioner.  Id. at 22.  M.B. testified that petitioner touched her on her

"tooly" with his hand on top of her underwear but not on her skin, that he "pushed" on her "tooly"

with his hand, and that "[i]t kind of hurt."  Id. at 25-26.  On an anatomical diagram of a young girl,

M.B. indicated that "tooly" was the name she uses to describe her vaginal area.  Id. at 22-24; Dkt.

# 29-5, State's Ex. 1, at 1.  M.B. also testified that petitioner "pulled [her] on top of him" while he

was lying on his back and that "[h]e moved his legs a little bit."  Dkt. # 29-3, Tr. Trial vol. 3, at 26-

27.  According to M.B., Grandmother did not wake up when petitioner was touching M.B.  Id. at 27.

       Mother's boyfriend saw petitioner in the bed with M.B. on the morning of November 7,

2011, when he left for work, but he was not aware at that time that petitioner was not allowed in the

house.  Dkt. # 29-3, Tr. Trial vol. 3, at 139-42, 146-47, 156-57.  When Grandmother woke up, she

found petitioner asleep on the fold-out couch next to M.B.  Id. at 41, 113.  Grandmother woke

petitioner up and told him to leave.  Id. at 112-13.  As M.B. was getting ready for school,

Grandmother asked M.B. if she was feeling well enough to go to school because M.B. had been ill

over the weekend.  Id. at 115.  M.B. responded by telling Grandmother that she would have felt

better but petitioner "was messing with [her] all night long" and "kept rubbing on her tutu."  Id. at

28-29, 115.  Based on M.B.'s response, Grandmother called 911 and Mother.  Id. at 29, 116.

       Three days after M.B. disclosed the abuse to Grandmother, she went to the Justice Center for

a forensic interview with Melissa Gantz.  Dkt. # 29-3, Tr. Trial vol. 3, at 180-82.  The videotaped

interview was admitted at trial and published to the jury.  Id. at 188-89, 211.  Consistent with her

trial testimony, M.B. told Gantz that petitioner touched her "tooly" when she was sleeping on the

fold-out couch with Grandmother.  Dkt. # 30, State's Ex. 3 (DVD of forensic interview).  Near the end of the interview, Gantz asked M.B. if anyone told her what to say, and M.B. responded that Mother and Grandmother did.  Id.  Gantz then asked M.B. what Mother and Grandmother told her to say and M.B. responded, "it was about my grandpa touching me."  Id.

At trial, when the prosecutor asked M.B. if Mother or Grandmother ever told her "to come into court and tell us a story that was not true," M.B. responded, "No."  Dkt. # 29-3, Tr. Trial vol. 3, at 30.  When the prosecutor asked M.B. if she saw petitioner in the courtroom, M.B. looked around but stated she did not see petitioner in the courtroom.  Id. at 30-31.  On further questioning from the prosecutor, M.B. testified that the person who touched her was named Johnny Kash Bryant, that he was her step-grandfather "for a little while," and that he was married to Grandmother but they were not married at the time of the incident.  Id. at 31-32.  M.B. also described petitioner as a white man "in like his 40s or 50s."  Id. at 41-42.

After M.B. testified, the State introduced evidence that petitioner abused Mother in the past. Before Mother testified on that topic, the trial court instructed the jury that it could not consider the evidence it was about to receive "as proof of the guilt or innocence of [petitioner] of the specific offense charged in the Information," and that the evidence was received "solely on the issue of [petitioner's] alleged motive, opportunity, intent, plan and identity."  Dkt. # 29-3, Tr. Trial vol. 3, at 59.  Mother, who was 29 years old at the time of trial, testified that the reason she told petitioner he was not allowed in the house was because he sexually abused her for several years, beginning when she was five years old, when he was married to Grandmother.  Id. at 60, 94.  The prosecutor elicited testimony from Mother that when she was between the ages of eight and 14, petitioner (1) held her hips and moved his hips against her while she sat on his lap in a recliner watching

television, (2) walked into the bathroom while she was in the shower and would not leave until she threatened to tell Grandmother, (3) tried to get her to "french kiss" him in exchange for a "spinner ring," (4) touched her vagina with his hands, fingers and tongue, (5) touched her breasts with his hands, and (6), on one occasion, placed a "really long neck massager" between her legs and touched her vagina with the massager. Dkt. # 29-3, Tr. Trial vol. 3, at 58-73. Mother testified that she disclosed the abuse to Grandmother (her mother), that DHS investigated her allegations in 1996 and 1998, and that she ran away from home and disclosed the abuse to law enforcement when she was 14 years old after petitioner came into her room and "licked [her] vagina." Id. at 73, 78.

During Mother's direct examination, and outside the presence of the jury, trial counsel raised objections to Mother's testimony about the "neck massager" because there was no notice of that allegation in the discovery materials and further objected that the prosecutor was eliciting testimony from Mother that went beyond the scope of the pretrial notice. Dkt. # 29-3, Tr. Trial vol. 3, at 63-65, 76-79. The trial court cautioned the prosecutor three times to stay "within the bounds of the notice" and, after denying trial counsel's request for a mistrial based on the discovery violation, told the prosecutor that the court would "suppress any further attempt to elicit further information from [Mother] based upon the [pretrial] notice." Id. at 65, 77, 79, 81-84.

The prosecutor also elicited testimony from Grandmother about Mother's sexual abuse allegations. Dkt. # 29-3, Tr. Trial vol. 3, at 96-109. Grandmother testified that Mother disclosed the abuse to her at the time, that she initially did not believe Mother, that petitioner denied the allegations, that law enforcement and DHS investigated the allegations, that she "kicked [petitioner] out of the house," and that she subsequently allowed him back into the house because she worked many hours and "really needed someone to watch [her] child." Id. at 96-101. Grandmother also

testified that DHS removed Mother from the home in October 1998, after Mother ran away, because DHS learned that petitioner was still in the home.  Dkt. # 29-3, Tr. Trial vol. 3, at 102-05.  On cross-examination, trial counsel elicited testimony from Grandmother that, on October 14, 1998, Grandmother told a Mayes County DHS worker that Mother "dropped the charges and told [petitioner] she was sorry she made the allegations."  Id. at 127.   Grandmother also testified that petitioner went to Mother's house in November 2011 because both Mother and M.B.'s uncle wanted to visit with petitioner, but Grandmother admitted that Mother did not seem happy to see petitioner.  Id. at 119, 121-22, 131.

At the close of State's evidence, trial counsel demurred to the evidence and, alternatively, moved for a directed verdict.  Dkt. # 29-3, Tr. Trial vol. 3, at 213.  The trial court overruled the demurrer and took the motion for directed verdict under advisement.  Id.

Petitioner did not testify at trial.  Dkt. # 29-4, Tr. Trial vol. 4, at 3-6.  Trial counsel called one witness, Detective Jeanne McKenzie, to testify that Mother, Grandmother, and Mother's boyfriend gave statements during the police investigation that were inconsistent with statements they made at trial.  Id. at 18-25, 28-29.  The prosecutor elicited testimony from McKenzie that both Grandmother and Mother's boyfriend reported seeing petitioner in the bed with M.B.  Id. at 29-30.

Before closing arguments, the trial court gave a limiting instruction, advising the jury that they could consider evidence of petitioner's prior bad acts "solely on the issue of his alleged intent, motive, plan and identity."  Dkt. # 29-7, O.R., at 94 [89].  The trial court also instructed the jury as follows:

> You have heard evidence that the defendant may have committed other offenses of child molestation in addition to the offense(s) for which he is now on trial.  You may consider this evidence for its bearing on any matter to which it is relevant

along with all of the other evidence and give this evidence the weight, if any, you deem appropriate in reaching your verdict.  You may not, however, convict the defendant solely because you believe he committed these other offenses or solely because you believe he has a tendency to engage in acts of child molestation.  The prosecution's burden of proof to establish the defendant's guilt beyond a reasonable doubt remains as to each and every element of the offense charged.

Dkt. # 29-7, O.R., at 95 [90].

Ultimately, the jury found petitioner guilty as charged and affixed punishment at 99 years' imprisonment and a $10,000 fine.  Dkt. # 29-4, Tr. Trial vol. 4, at 77-79.  The trial court sentenced petitioner accordingly.  Dkt. # 29-6, Tr. Sent. Hr'g, at 4.

Represented by counsel, petitioner filed a timely direct appeal in the Oklahoma Court of Criminal Appeals (OCCA).  Dkt. # 10, Am. Pet., at 2.  Petitioner claimed (1) the trial court erroneously admitted evidence that petitioner sexually abused M.B.'s Mother when petitioner was married to M.B.'s Grandmother, (2) the trial court erroneously applied Oklahoma law when it assessed an attorney fee and (3) petitioner's "99-year sentence is excessive and should be modified."  Dkt. # 28-1, Pet'r Appeal Br., at 2.  In an unpublished summary opinion filed September 10, 2014, in Case No. F-2013-805, the OCCA rejected each claim on the merits and affirmed petitioner's judgment and sentence.  Dkt. # 28-3, Bryant v. State, No. F-2013-805 (Okla. Crim. App. 2014) (unpublished), at 1-5.  Petitioner did not seek further direct review.

Proceeding pro se, petitioner sought postconviction relief in state district court.  In his first application for postconviction relief, petitioner raised ten claims:

(1) The State failed to prove every element of the crime charged beyond a reasonable doubt.

(2) Petitioner is actually innocent.

(3) Trial counsel provided ineffective assistance by (a) failing to challenge the sufficiency of the evidence, (b) advising petitioner to waive his right to a preliminary hearing, (c) failing to perform an adequate pretrial investigation,

9

particularly by failing to obtain text messages M.B.'s mother sent to petitioner, (d) failing to use a police report to effectively cross-examine M.B.'s mother, (e) failing to endorse an expert witness, (f) failing to call M.B.'s uncle and Leda Dierich as character witnesses, and (g) failing to request a hearing under OKLA. STAT. tit. 12, § 2803.1.

(4)     Cumulative trial counsel errors deprived petitioner of a fair trial.

(5)     The prosecutor committed misconduct by (a) asking the jury during opening statements to impose a 25-year sentence for the acts he committed against M.B. and the prior bad acts he allegedly committed against M.B.'s mother, (b) knowingly admitting and using evidence of prior bad acts "as substantive proof" to obtain petitioner's conviction, (c) knowingly using M.B.'s false allegation of abuse, and (d) admitting evidence that was not endorsed in discovery, namely, evidence that petitioner used a neck massager to molest M.B.'s mother.

(6)     The cumulative effect of prosecutorial misconduct deprived him of a fair trial.

(7)     The trial court failed to properly instruct the jury on the use of the evidence of prior bad acts.

(8)     The trial court failed to conduct a hearing, as required under OKLA. STAT. tit. 12, § 2803.1.

(9)     The OCCA erred when it concluded that the trial court properly admitted evidence of prior bad acts under OKLA. STAT. tit. 12, § 2414 when the trial court relied on OKLA. STAT. tit. 12, § 2404(B) to admit that evidence.

(10)     Appellate counsel provided ineffective assistance by (a) failing to raise an ineffective-assistance-of-trial-counsel claim on the grounds identified in petitioner's first application for postconviction relief, (b) failing to raise the other claims asserted in petitioner's first application for postconviction relief, and (c) failing to properly brief petitioner's claims regarding erroneous jury instructions and prosecutorial misconduct.

Dkt. # 28-4, Appl. for PCR, at 4-29. The state district court denied petitioner's first application for postconviction relief. Dkt. # 28-6, Order, at 1. The court found that claims one, three, four, five, six and eight were procedurally barred as they were either not raised on direct appeal or raised and rejected on direct appeal. Id. at 6. The court addressed, and rejected on the merits, claims two and ten: petitioner's actual-innocence claim and his ineffective-assistance-of-appellate-counsel claim. Id. at 6-10. Petitioner failed to perfect a timely appeal, but was granted leave to file a postconviction appeal out of time. Dkt. # 28-8, Bryant v. State, No. PC-2016-816 (Okla. Crim. App. 2016)

10

(unpublished), at 1-4; Dkt. # 28-13, <u>Bryant v. State</u>, No. PC-2017-256 (Okla. Crim. App. 2017) (unpublished), at 1-2.  Petitioner timely perfected the out-of-time appeal, and in an order filed June 21, 2017, the OCCA affirmed the state district court's decision denying petitioner's first application for postconviction relief.  Dkt. # 28-15, <u>Bryant v. State</u>, No. PC-2017-379 (Okla. Crim. App. 2017) (unpublished), at 1.   The OCCA agreed with the state district court's determinations (1) that petitioner waived all claims except for his actual-innocence claim and ineffective-assistance-of-appellate-counsel claim, (2) that petitioner's "interpretation of the evidence presented at trial did not establish his actual innocence," (3) that petitioner failed to establish appellate counsel was ineffective "for raising only 3 propositions of error" and (4) that, because petitioner's "post-conviction claims were substantively without merit . . . both trial and appellate counsel's failure to raise these alleged errors at trial and on direct appeal did not constitute ineffective assistance of counsel." <u>Id.</u> at 2-5.

Petitioner filed a subsequent application for postconviction relief, asserting that appellate counsel provided ineffective assistance by:

(1)     Failing to argue that trial counsel was ineffective for (a) failing to obtain and properly use a police report or DHS report to properly cross-examine M.B.'s grandmother (b) failing to obtain and use a police report to properly cross-examine M.B., (c) failing to obtain and use a police report to call crucial witnesses, (d) failing to re-call witnesses to rebut and impeach the State's witnesses after the jury viewed the videotape of M.B.'s forensic interview and (e) failing to request jury instructions on multiple issues of prosecutorial misconduct;

(2)     Failing to argue that the prosecutor committed misconduct by (a) making multiple improper statements during trial, (b) offering his personal opinion, and (c) misstating facts;

(3)     Failing to argue that the trial court abused its discretion by admitting evidence of petitioner's prior bad acts; and

(4)     Omitting the issues petitioner raised in his subsequent application for postconviction relief.

11

Dkt. # 28-16, Appl. PCR, at 1-22.  By order filed August 23, 2017, the state district court denied petitioner's subsequent application, finding that petitioner "failed to offer any legally adequate reason for failing to previously assert these propositions" in his first application for postconviction relief, that any claims previously asserted were barred by res judicata and that any new claims that could have been asserted in the first application were waived.  Id. at 1-7; see OKLA. STAT. tit. 22, § 1086 (requiring all available claims for postconviction relief to be raised in original, supplemental or amended application).  Petitioner timely appealed the denial of his subsequent application and, by order filed November 21, 2017, in Case No. PC-2017-941, the OCCA affirmed the state district court's decision.  Dkt. # 28-20, Bryant v. State, No. PC-2017-941 (Okla. Crim. App. 2017) (unpublished), at 1-3.

On August 16, 2017, while petitioner's subsequent application for postconviction relief was pending in state district court, petitioner commenced this federal habeas action by filing a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) and a motion to stay (Dkt. # 2).  The Court denied petitioner's request for a stay, but later granted his motion to file an amended petition.  Dkt. ## 5, 6, 9.  In his amended petition, petitioner identifies five claims, four of which include multiple sub-claims.  Dkt. # 10, Am. Pet., at 8-33.

Respondent urges the Court to deny the petition because petitioner failed to exhaust some claims and procedurally defaulted others and because 28 U.S.C. § 2254(d) bars relief on the claims petitioner properly exhausted in state court.  Dkt. # 28, Resp., at 9-59.

***DISCUSSION***

### I.      Legal framework

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's amended habeas petition.  See 28 U.S.C. § 2254.  Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Id. § 2254(a); see Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment subject to collateral attack in federal court.").

In addition, before a federal court may grant habeas relief, the petitioner must show that he exhausted available state-court remedies, id. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," Hawkins v. Mullin, 291 F.3d 658, 668 (10th Cir. 2002).  To fairly present a claim, the claim raised in state court "must be the 'substantial equivalent' of its federal habeas counterpart."  Grant v. Royal, 886 F.3d 874, 891 (10th Cir. 2018) (quoting Picard v. Connor, 404 U.S. 270, 278 (1971)); see, e.g., Smallwood v. Gibson, 191 F.3d 1257, 1267 (10th Cir. 1999) (holding that an ineffective-assistance-of-counsel claim was not exhausted when petitioner "raised an ineffective assistance of counsel claim on direct appeal [but] based it on different reasons than those expressed in his habeas petition").

When a petitioner fails to present his or her federal claims in state court, those claims are unexhausted.  "Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies."  Grant, 886 F.3d at 891-92 (quoting Bland v. Sirmons, 459 F.3d 999, 1012 (10th Cir. 2006)).  "However, dismissal . . . is not appropriate if the state court would now find the [unexhausted] claims procedurally barred on independent and

adequate state procedural grounds." Grant, 886 F.3d at 892 (quoting Smallwood, 191 F.3d at 1267).

Thus, if the federal court finds that a state court would apply a procedural bar to the petitioner's

unexhausted claims, the federal court may apply an anticipatory procedural bar and deem those

claims procedurally defaulted for purposes of federal habeas review. Id.; see also Anderson v.

Sirmons, 476 F.3d 1131, 1140 n. 7 (10th Cir. 2007) (defining "anticipatory procedural bar").

   If the petitioner properly presented his or her federal claims in state court, this Court's review

depends on the manner of disposition.  If the state court adjudicated those claims on the merits, a

federal court can grant relief only if the petitioner first demonstrates that the OCCA's adjudication

of those claims "resulted in a decision that" either (1) "was contrary to . . . clearly established Federal

law," 28 U.S.C. § 2254(d)(1), (2) "involved an unreasonable application of clearly established

Federal law," id.,[5] or (3) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding," id. § 2254(d)(2).  "A state-court decision is only

contrary to clearly established federal law if it 'arrives at a conclusion opposite to that reached by'

the Supreme Court, or 'decides a case differently' than the Court on a 'set of materially

indistinguishable facts.'"  Wood v. Carpenter, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting

Williams, 529 U.S. at 412-13).  "A state court's decision unreasonably applies federal law if it

'identifies the correct governing legal principle' from the relevant Supreme Court decisions but

applies those principles in an objectively unreasonable manner." Id. (quoting Wiggins v. Smith, 539

---

[5]    As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing
legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme
Court's] decisions as of the time of the relevant state-court decision."  Lockyer v. Andrade,
538 U.S. 63, 71-72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also
House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court
holdings—the exclusive touchstone for clearly established federal law—must be construed
narrowly and consist only of something akin to on-point holdings").

U.S. 510, 520 (2003)).  But "a state court's application of federal law is only unreasonable if 'all fairminded jurists would agree that the state court decision was incorrect.'" Wood, 907 F.3d at 1289 (quoting Frost v. Pryor, 749 F.3d 1212, 1225 (10th Cir. 2014)).  Lastly, "a state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'" Id. (quoting Byrd v. Workman, 645 F.3d 1159, 1170-72 (10th Cir. 2011)).  And, in considering a challenge to the state court's factual findings, a federal court must presume those findings are correct unless the petitioner rebuts that presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

If the state court denied the petitioner's federal claims on procedural grounds, without reaching the merits, those claims are procedurally defaulted for purposes of federal habeas review. Ordinarily, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule."  Davila v. Davis, 137 S. Ct. 2058, 2064 (2017).  A state procedural rule "is independent if it is separate and distinct from federal law," and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

Regardless of whether a petitioner's federal claim is procedurally defaulted in state court through the state court's application of a procedural bar or is deemed procedurally defaulted in federal court through application of an anticipatory procedural bar, a federal court will not review the procedurally defaulted claim unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a "fundamental miscarriage of

15

justice" will result if the court does not review the claim.[6]  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986).  Factors that may support the requisite cause include: previously unavailable evidence, a change in the law, interference by state officials and, in some cases, ineffective assistance of appellate counsel.  Id.  If a petitioner fails to demonstrate cause, the federal court need not consider whether the petitioner can demonstrate prejudice.  Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995).  If the petitioner cannot demonstrate cause and prejudice, the petitioner may invoke the miscarriage-of-justice exception.  But that exception is "implicated only in 'extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  Magar v. Parker, 490 F.3d 816, 820 (10th Cir. 2007) (quoting Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999)).  To support a tenable claim of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schulp v. Delo, 513 U.S. 298, 327 (1995).

Finally, even if a habeas petitioner satisfies § 2254(d)'s exacting standards or makes the necessary showings to overcome the procedural default of a federal claim, it does not necessarily follow that the petitioner is entitled to habeas relief.  Rather, it merely permits the federal court to

---

[6]     In some circumstances, the federal court may choose to overlook the procedural default and deny habeas relief on the merits.  See 28 U.S.C. § 2254(b)(2); Smith v. Duckworth, 824 F.3d 1233, 1242 (10th Cir. 2016) (explaining that "where 'the claim may be disposed of in a straightforward fashion on substantive grounds,' this court retains discretion to bypass the procedural bar and reject the claim on the merits." (quoting Revilla v. Gibson, 283 F.3d 1203, 1210-11 (10th Cir. 2002))).

16

review the petitioner's federal claims <u>de</u> <u>novo</u>.  <u>Harmon v. Sharp</u>, 936 F.3d 1044, 1057 (10th Cir. 2019); <u>Milton v. Miller</u>, 744 F.3d 660, 670-71 (10th Cir. 2014).  And, in most cases, when the federal court finds a constitutional error on <u>de</u> <u>novo</u> review, it then "must assess the prejudicial impact of [that] constitutional error . . . under the 'substantial and injurious effect' standard set forth in <u>Brecht</u> [v. Abrahamson, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness."  <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007).  Under the <u>Brecht</u> standard, a federal court will grant habeas relief only if it "is in grave doubt as to the harmlessness of an error that affects substantial rights."  <u>O'Neal v. McAninch</u>, 513 U.S. 432, 445 (1995).

With this legal framework in mind, the Court turns to petitioner's claims.

## II.  Analysis

Broadly stated, petitioner seeks federal habeas relief on five claims:  (1) he received ineffective assistance of trial counsel, (2) prosecutorial misconduct deprived him of a fair trial, (3) trial court errors deprived him of a fair trial, (4) he received ineffective assistance of appellate counsel, and (5) the cumulative effect of the errors alleged in claims one through four deprived him of a fair trial.  Dkt. # 10, Am. Pet., at 8-33.

Respondent contends that the procedural default doctrine bars relief as to most of petitioner's claims, either because the OCCA found portions of his claims procedurally barred or because petitioner failed to exhaust portions of his claims.  Respondent further contends that 28 U.S.C. § 2254(d) bars relief as to those claims that the OCCA adjudicated on the merits.  Dkt. # 28, Resp., at 9-59.

17

### A.      Claim one: ineffective assistance of trial counsel

Petitioner claims that trial counsel performed deficiently and prejudicially by (a) failing to raise a claim of actual innocence, (b) erroneously advising petitioner to waive his right to a preliminary hearing, (c) failing to obtain "exculpatory" evidence, namely a Mayes County DHS report and text messages from M.B.'s Mother and Grandmother, (d) failing to call Janet Brand, Leda Dierich, and  M.B.'s uncle as defense witnesses, (e) failing to "re-call and cross-examine" M.B.'s Mother and Grandmother after the jury viewed M.B.'s forensic interview, and (f) failing to endorse an expert witness.  Dkt. # 10, Am. Pet., at 8-20.

The Sixth Amendment guarantees a defendant's right to the assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984).  To establish a Sixth Amendment violation, a defendant must demonstrate deficient performance and resulting prejudice.  Id. at 687. "The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms."  Id. at 688.  And resulting prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 693-94.

The Strickland standard is "highly deferential."  466 U.S. at 689.  The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. Under § 2254(d), habeas review of a Strickland claim that was adjudicated on the merits in state court is "doubly deferential."  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  "When 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied

18

Strickland's deferential standard."  Harrington v. Richter, 562 U.S. 86, 105 (2011).  And because

"[t]he Strickland standard is a general one . . . the range of reasonable applications is substantial,"

making it even more difficult for a habeas petitioner to show that the state court's application of

Strickland was objectively unreasonable.  Richter, 562 U.S. at 105.

Petitioner presented a substantially similar version of claim one in his first application for

postconviction relief.  There, he claimed that trial counsel was ineffective for (a) failing to challenge

the sufficiency of the evidence, (b) advising petitioner to waive his right to a preliminary hearing,

(c) failing to perform an adequate pretrial investigation, particularly by failing to obtain text

messages petitioner allegedly received from M.B.'s Mother, (d) failing to use a police report to

effectively cross-examine M.B.'s Mother, (e) failing to endorse an expert witness, (f) failing to call

M.B.'s uncle and Leda Dierich as witnesses and (g) failing to request a hearing under OKLA. STAT.

tit. 12, § 2803.1.  Dkt. # 28-4, Appl. for PCR, at 9-17.  Petitioner separately claimed that he was

"actually innocent."  Id. at 8-9.

The OCCA rejected the "actual-innocence" claim on the merits and found that petitioner

waived the ineffective-assistance-of-trial-counsel claim ("IATC claim") by failing to raise it on direct

appeal.  Dkt. # 28-15, OCCA Order, at 2-4.  Nevertheless, the OCCA effectively rejected the IATC

claim on the merits when it considered whether appellate counsel was ineffective for failing to argue

trial counsel's ineffectiveness on the grounds presented in the first application for postconviction

relief.  Id.  Applying the standards from Strickland and Logan v. State, 293 P.3d 969, 973 (Okla.

Crim. App. 2013), the latter of which requires courts to examine "the merits of the issue(s) that

19

appellate counsel failed to raise,"[7] the OCCA rejected the IATC claim.  Dkt. # 28-15, at 4-5.  The

OCCA stated,

> In support of his ineffective assistance of appellate counsel claim, [petitioner] argues that trial counsel was ineffective for not arguing that the State failed to prove each and every element of the charged offense; trial counsel advised [petitioner] to waive his preliminary hearing; trial counsel failed to properly investigate information provided by [petitioner] regarding text messages he received from the victim's mother; trial counsel failed to use a police report to cross-examine the victim's mother; trial counsel did not endorse an expert witness to rebut the victim's testimony; trial counsel failed to call character witnesses on [petitioner's] behalf; and trial counsel failed to request a taint hearing.

Dkt. # 28-15, OCCA Order, at 2-3.  As to these issues, the OCCA agreed with the state district

court's determination that because petitioner's "post-conviction claims were substantively without

merit . . . both trial and appellate counsel's failure to raise these alleged errors at trial and on direct

appeal did not constitute ineffective assistance of counsel."  Id. at 3-4.  The OCCA further stated that

petitioner's claims "as presented in [the first] application for Post-Conviction relief do not support

a finding that either trial or appellate counsel was ineffective."  Id. at 5.  Thus, the OCCA concluded,

petitioner's "ineffective assistance of trial and appellate counsel claims are without merit."  Id.

For two reasons, petitioner is not entitled to federal habeas relief on claim one.  First, to the

extent petitioner reasserts the same or substantially similar grounds for trial counsel's alleged

ineffectiveness that he presented in his first application for postconviction relief, he fails to

demonstrate, or even argue, that the OCCA's decision on his IATC claim involves an unreasonable

application of Strickland or that the OCCA either misstated or mispprehended the facts relative to

his IATC claim.  To be fair, petitioner discusses many facts that he believes are sufficient to show

---

[7]     Logan draws this legal principle from the clearly established Federal law stated in Smith v. Robbins, 528 U.S. 259 (2000).  See Logan 293 P.3d at 973-77 (discussing Robbins and Tenth Circuit cases applying Robbins).

that trial counsel was ineffective. Dkt. # 10, Am. Pet., at 8-11.  But he does not argue that the OCCA misunderstood those facts; rather, he presents those facts in a manner that urges this Court to independently review the record and apply Strickland, Id.  Because the OCCA already applied Strickland in evaluating petitioner's IATC claim, and petitioner has not shown that the OCCA's application was objectively unreasonable, petitioner is not entitled to de novo review of that claim. Thus, § 2254(d) bars relief on claim one.

Second, to the extent petitioner either (1) asserts the same or substantially similar grounds for trial counsel's alleged ineffectiveness that he presented in his subsequent application for postconviction relief or (2) asserts new grounds for trial counsel's alleged ineffectiveness that he did not present in state court, those portions of claim one are procedurally defaulted.  And petitioner fails to demonstrate cause and prejudice for the procedural default or a credible claim of actual innocence. Notably, the OCCA rejected petitioner's "actual-innocence" claim, agreeing with the state district court's determination that petitioner's "interpretation of the evidence presented at trial did not establish his actual innocence" and that M.B.'s "testimony concerning the abuse and her identification of [petitioner] as the perpetrator to her mother and grandmother was sufficient to support the jury's verdict."  Dkt. # 28-15, OCCA Order, at 3.  And, while ineffective assistance of appellate counsel can sometimes serve as "cause" to overcome a procedural default, Carrier, 477 U.S. at 488, the OCCA also rejected petitioner's claim that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness on the grounds that petitioner identified in his original application for postconviction relief, Dkt. # 28-15, OCCA Order, at 2-5, and in his subsequent application for postconviction relief, Dkt. # 28-20, OCCA Order, at 1-3.  The OCCA's decisions on petitioner's actual-innocence and ineffective-assistance-of-appellate-counsel claims are entitled to

21

deference under the AEDPA, whether the OCCA considered the claims as substantive claims for relief or as potential cause to excuse a procedural default in state court.  Smith, 824 F.3d at 1242 n.6.  On the record presented, this Court cannot conclude that the OCCA's decisions on these claims are "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.  As a result, the procedural default doctrine also bars habeas relief on claim one.

**B.     Claim two: prosecutorial misconduct**

Petitioner alleges the prosecutor committed misconduct, and deprived him of a fair trial by (a) introducing testimony from M.B. and M.B's Mother when the prosecutor knew or should have known that their sexual abuse allegations were false and (b) making false and misleading statements throughout trial, resulting in an excessive sentence.  Dkt. # 10, Am. Pet., at 20-26.

Generally, to obtain federal habeas relief on a prosecutorial-misconduct claim, a habeas petitioner must show, in light of the "entire proceedings," that the prosecutor's alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  More specifically, a petitioner alleging a due process violation arising from the prosecutor's use of false testimony must show "(1) a government witness committed perjury, (2) the prosecution knew the testimony to be false, and (3) the testimony was material."  United States v. Garcia, 793 F.3d 1194, 1207 (10th Cir. 2015).

Petitioner, through appellate counsel, argued on direct appeal that the prosecutor committed misconduct that resulted in an unfair trial.  Dkt. # 28-3, OCCA Op., at 2 n.1.  But the OCCA did not adjudicate petitioner's prosecutorial-misconduct claim because appellate counsel made those arguments throughout the appellate brief without raising a prosecutorial-misconduct claim in the

manner required by the OCCA's procedural rules.  Dkt. # 28-3, OCCA Op., at 2 n.1.  In his first application for postconviction relief, petitioner raised a prosecutorial-misconduct claim, arguing that the prosecutor deprived him of a fair trial by (a) asking the jury during opening statements to impose a 25-year sentence for the acts he committed against M.B. and the prior sexual abuse of M.B.'s Mother, (b) knowingly admitting and using evidence of prior bad acts "as substantive proof" to obtain petitioner's conviction, (c) knowingly using M.B.'s false allegation of abuse, and (d) admitting evidence that was not endorsed in discovery, namely, evidence that petitioner used a neck massager to molest M.B.'s Mother.  Dkt. # 28-4, Appl. for PCR, at 18-21.  Because petitioner did not properly present that claim on direct appeal, the OCCA agreed with the state district court's determination that petitioner waived the prosecutorial-misconduct claim.  Dkt. # 28-15, OCCA Order, at 3-4.  Nevertheless, the OCCA effectively adjudicated the merits of this claim when it applied Strickland and Logan to reject his claim that appellate counsel was ineffective for failing to raise a prosecutorial-misconduct claim on direct appeal.  Id. at 3-5.  As previously discussed, the OCCA found that the claims petitioner identified as wrongly omitted from his direct appeal, including his prosecutorial-misconduct claim, "were substantively without merit."  Id. at 3, 5.  In other words, to determine whether appellate counsel was ineffective for failing to raise the prosecutorial-misconduct claim the OCCA considered the merits of that claim and found that, because the claim lacked merit, appellate counsel was not ineffective.  Id. at 3-5.

Petitioner neither argues nor demonstrates that the OCCA unreasonably applied Strickland or unreasonably determined the facts in reaching this decision.  Thus, to the extent he asserts the same, or substantially similar, prosecutorial-misconduct claim that he presented in his first application for postconviction relief, § 2254(d) bars habeas relief on claim two.  Moreover, to the

extent petitioner presents new or different grounds to support his prosecutorial misconduct claim, that were either procedurally barred in his subsequent application for postconviction relief or never presented in state court, that portion of claim two is procedurally defaulted.  And for the same reasons stated in the analysis of claim one, petitioner cannot rely on ineffective assistance of appellate counsel or his assertion of "actual innocence" to excuse the procedural default of his prosecutorial-misconduct claim.  See supra, pp. 21-22.  Thus, the procedural default doctrine also bars habeas relief on claim two.

### C.    Claim three: trial court errors

Petitioner alleges the trial court abused its discretion, and denied him a fair trial by (a) erroneously admitting evidence of prior bad acts, (b) failing to properly explain to petitioner the consequences of waiving his right to a preliminary hearing, and (c) failing to conduct a hearing, as required by OKLA. STAT. tit. 12, § 2803.1.  Dkt. # 10, Am. Pet., at 26-30.

### 1.    Erroneous admission of prior bad acts

Petitioner argues the trial court abused its discretion and violated his constitutional right to a fair trial when it admitted evidence that petitioner committed acts of sexual abuse against M.B.'s Mother when M.B.'s Mother was a minor.  Dkt. # 10, Am. Pet., at 26-29.

As respondent contends, the admission of evidence is generally a matter of state law and does not present a cognizable claim for federal habeas review.  Dkt. # 28, Resp., at 45; see Estelle v. McGuire, 502 U.S. 52, 56 (1991) (noting that the determination of whether evidence was properly admitted under state law "is no part of a federal court's habeas review of a state conviction").  As a result, federal habeas courts "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice

flowing from its admission that the admission denies [the petitioner] due process of law." <u>Knighton</u> <u>v. Mullin</u>, 293 F.3d 1165, 1171 (10th Cir. 2002) (quoting <u>Duvall</u>, 139 F.3d at 787). This means that a federal court ordinarily must determine whether, when "considered in light of the entire record, [the admission of other crimes evidence] resulted in a fundamentally unfair trial." <u>Id.</u>

Petitioner raised this claim on direct appeal, arguing that the admission of the prior sexual abuse allegations violated his Fourteenth Amendment right to due process and a fair trial. Dkt. # 28-1, Pet'r Appeal Br., at 10-30. The OCCA rejected the claim on the merits, finding no error. Dkt. # 28-3, OCCA Op., at 2-3. The OCCA reasoned,

> Evidence of [petitioner's] prior bad acts of child molestation was properly admitted to establish his propensity to commit the sexual assault against M.B. and to rebut his claim that the allegations against him were fabricated. 12 O.S. 2011, § 2414(A). The age of the other crimes evidence was one factor among many the trial court could consider in weighing the probative value against the prejudicial effect of this evidence. <u>Johnson v. State</u>, 2010 OK CR 28, ¶ 6, 250 P.3d 901, 903-04. The many similarities between the prior crimes and the charged offense show a visible connection and make the probative value of the prior acts substantially outweigh any risk of unfair prejudice.

Dkt. # 28-3, OCCA Op., at 2-3.

Even though the OCCA did not mention the Fourteenth Amendment, this Court must presume that the OCCA recognized that petitioner was asserting a federal due-process claim. <u>See</u> <u>Harmon</u>, 936 F.3d at 1056 (noting that "[a] state court need not cite, or even be aware of, applicable Supreme Court decisions, 'so long as neither the reasoning nor the result of the state-court decision contradicts them'" (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (<u>per curiam</u>))). As a result, the only question for this Court is whether the OCCA's application of the due-process standard was objectively unreasonable. 28 U.S.C. § 2254(d)(1).

Petitioner does not argue that the OCCA unreasonably applied the due-process standard.  Nor could he prevail on that argument.  As the OCCA reasoned, the trial court did not err in admitting the evidence.  Under Oklahoma law, evidence of prior bad acts is admissible under OKLA. STAT. tit. 12, § 2404(B) for limited purposes and, in cases like petitioner's where the charged offense is lewd molestation of a child, is admissible under OKLA. STAT. tit. 12, § 2414 for any purpose for which it may be relevant.  Because the OCCA found no error in admitting this evidence, it necessarily found no due process violation.  Moreover, the record shows no basis for a procedural due-process violation arising from the admission of this evidence because the State provided notice to petitioner of its intent to introduce this evidence and petitioner had, and exercised, his right to be heard on the matter during the pretrial hearing on the admissibility of this evidence.  Dkt. # 29-1, Tr. Trial vol. 1, at 2-6; see LaChance v. Erickson, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard.").

Based on the foregoing, § 2254(d) bars federal habeas relief as to this portion of claim three.

## 2.      Preliminary hearing waiver and "taint" hearing issues

Petitioner also argues in claim three that the trial court abused its discretion and denied him a fair trial by failing to explain the consequences of waiving his preliminary hearing and failing to conduct a pretrial hearing on the admissibility of statements M.B. made during her forensic interview, as required by state law.   Dkt. # 10, Am. Pet., at 29-30.

The Court agrees with respondent that these sub-claims are both procedurally barred.  Dkt. # 28, Resp., at 44-50.  In his first application for postconviction relief, petitioner raised a substantive claim asserting that the trial court erred in failing to conduct a hearing as required by OKLA. STAT. tit. 12, § 2803.1.  Dkt. # 28-4, Appl. for PCR, at 23-25.  The OCCA agreed with the state district

court that petitioner waived this claim by failing to raise it on direct appeal.  Dkt. # 28-15, OCCA

Order, at 2-3.  Regardless of whether petitioner could make the showings necessary to excuse the

procedural default of this portion of claim three, the claim lacks merit.  It is clear from the record that

the trial court held a hearing before trial to determine the admissibility of M.B.'s statements.  Dkt.

# 29-2, Tr. Trial vol. 2, at 76-87.  For that reason, petitioner is not entitled to habeas relief on this

portion of claim three.

Petitioner did not exhaust the portion of claim three that alleges the trial court erred in failing

to advise him of the consequences of waiving his right to a preliminary hearing.  That portion of

claim three is thus subject to an anticipatory procedural bar.  And, for the reasons discussed in the

analysis of claims one and two, petitioner cannot overcome that bar because he fails to present a

credible claim of actual innocence and cannot rely on ineffective assistance of appellate counsel as

"cause" to excuse the procedural default.  See supra, pp. 21-22.  Thus, the procedural default

doctrine bars relief as to this portion of claim three.

### D.      Claim four: ineffective assistance of appellate counsel

Petitioner alleges that appellate counsel performed deficiently and prejudicially by (a)

combining multiple issues into one claim, resulting in the OCCA finding those claims waived or

procedurally barred and (b) omitting "the claims raised in this petition" on direct appeal.  Dkt. # 10,

Am. Pet., at 32-33.

The Sixth Amendment guarantees a defendant's right to the assistance of counsel in criminal

proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984).  To establish a Sixth Amendment

violation, a defendant must demonstrate deficient performance and resulting prejudice.  Id. at 687.

"The  proper  measure  of  attorney  performance  [is]  simply  reasonableness  under  prevailing

professional norms." Id. at 688.  And resulting prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

When a defendant claims appellate counsel was ineffective, Strickland's two-part standard applies.  Robbins, 528 U.S. at 289.  However, when the defendant alleges that appellate counsel performed deficiently by failing to raise particular issues on appeal, the reviewing court must "look to the merits of the omitted issue" to determine whether counsel performed deficiently.  Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001)).  The omission of "plainly meritorious" issues may support a finding of deficient performance whereas the omission of a "meritless" issue will not.  Id.  Issues that are neither plainly meritless nor plainly meritorious must be assessed against the strength of the claims that were raised, with due deference to appellate counsel's "professional judgment" in omitting comparatively weaker issues.  Id.  Moreover, as previously stated, "[w]hen 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

As previously discussed, petitioner raised an ineffective-assistance-of-appellate-counsel claim ("IAAC claim") in his first application for postconviction relief.  There, he argued that appellate counsel performed deficiently and prejudicially by (a) failing to raise an ineffective-assistance-of-trial-counsel claim on the grounds identified in petitioner's first application for postconviction relief, (b) failing to raise the other claims asserted in petitioner's first application for postconviction relief, and (c) failing to properly brief petitioner's claims on direct appeal regarding

erroneous jury instructions and prosecutorial misconduct.  Dkt. # 28-4, Appl. for PCR, at 4-29.

Applying the standards from <u>Strickland</u> and <u>Logan</u>, the OCCA rejected the IAAC claim.  Dkt. # 28-

15, OCCA Order, at 4-5.  The OCCA agreed with the state district court's determination that because

petitioner's "post-conviction claims were substantively without merit . . . both trial and appellate

counsel's failure to raise these alleged errors at trial and on direct appeal did not constitute

ineffective assistance of counsel." <u>Id.</u> at 3-4.  The OCCA further stated that petitioner's claims "as

presented in [the first] application for Post-Conviction relief do not support a finding that either trial

or appellate counsel was ineffective." <u>Id.</u> at 5.  Thus, the OCCA concluded, petitioner's "ineffective

assistance of trial and appellate counsel claims are without merit."  <u>Id.</u>

Undeterred, petitioner reasserted an enhanced IAAC claim in his subsequent postconviction

application.  Specifically, he alleged appellate counsel provided ineffective assistance by (1) failing

to argue that trial counsel was ineffective for (a) failing to obtain and properly use a police report or

DHS report to properly cross-examine M.B.'s Grandmother, (b) failing to obtain and use a police

report to properly cross-examine M.B., (c) failing to obtain and use a police report to call crucial

witnesses, (d) failing to re-call witnesses to rebut and impeach the State's witnesses after the jury

viewed the videotape of M.B.'s forensic interview, and (e) failing to request jury instructions on

multiple issues of prosecutorial misconduct; (2) failing to argue that the prosecutor committed

misconduct by (a) making multiple improper statements during trial, (b) offering his personal

opinion, and (c) misstating facts; (3) failing to argue that the trial court abused its discretion by

admitting evidence of petitioner's prior bad acts; and (4) omitting the issues petitioner raised in his

subsequent application for postconviction relief.  Dkt. # 28-16, Appl. PCR, at 4-21.

The OCCA rejected this IAAC claim on procedural grounds.  Specifically, the OCCA agreed with the state district court's determination that some portions of the claim were barred by res judicata, that some portions of the claim were waived because petitioner failed to raise them in his first application for postconviction relief, and that petitioner failed to provide "[s]ufficient reason" for not raising all portions of his IAAC claim "in previous proceedings."  Dkt. # 28-20, OCCA Order, at 2.

For two reasons, petitioner is not entitled to federal habeas relief on claim four.  First, to the extent petitioner reasserts the same or substantially similar grounds for appellate counsel's alleged ineffectiveness that he presented in his first application for postconviction relief, he fails to demonstrate, or even argue, that the OCCA's decision on the IAAC claim he raised in his first application for postconviction relief involves an unreasonable application of Strickland or that the OCCA either misstated or mispprehended the facts relative to the IAAC claim presented in that application.  Thus, § 2254(d) bars relief on that portion of claim four.

Second, to the extent petitioner reasserts the same or substantially similar grounds for appellate counsel's alleged ineffectiveness that he presented in his subsequent application for postconviction relief, he procedurally defaulted the IAAC claim, as presented in the subsequent application, and he fails to make the necessary showings to overcome the procedural default.  See supra, pp. 21-22.  Thus, the procedural default doctrine also bars relief on claim four.

### E.    Claim five: cumulative errors

Lastly, petitioner alleges that the cumulative effect of trial and appellate counsel's ineffectiveness, the trial court's errors, and the prosecutor's misconduct deprived him of a fair trial. Dkt. # 10, Am. Pet., at 33.

"A cumulative-error analysis merely aggregates all the errors that individually have found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Hanson v. Sherrod, 797 F.3d 810, 852 (10th Cir. 2015) (quoting Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003)).  But courts "cumulate error only upon a showing of at least two actual errors."  Id.  Because the Court has identified no errors, the Court denies relief as to claim five.

## CONCLUSION

After careful review of the state-court record, petitioner's claims, and the parties' arguments, the Court concludes that petitioner has not shown that his custody under the challenged state-court judgment violates the Constitution or federal law.  28 U.S.C. § 2254(a).  The Court therefore denies his amended petition for writ of habeas corpus.

### Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When the district court rejects a petitioner's constitutional claims on the merits, the applicant must make this showing by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  When the district court denies a habeas petition on procedural grounds, "without reaching the prisoner's underlying constitutional claim," the applicant must make this showing by demonstrating "that jurists of reason would find it debatable whether the petition states a valid claim

of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484.

Considering these standards, the Court declines to issue a certificate of appealability as to any issues asserted in the amended petition.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Petitioner's request for an evidentiary hearing is **denied**.

2. The amended petition for writ of habeas corpus (Dkt. # 10) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 29th day of September, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE